## Bealer, Appellant, v. Simons.

Argued December 10, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*William H. Agnew,* for appellant.

*Carl F. Skinner,* with him *James F. Prendergast,* for appellee.

OPINION BY CERCONE, J., March 19, 1970:

On February 28, 1959, claimant Stanley R. Bealer had an accident during the course of his employment which resulted in a serious injury to his left eye. That injury necessitated the removal of the left eye on March 8, 1962 and the substitution of an artificial eye.

On March 28, 1966 claimant was required to have the artificial eye replaced at a cost of $125 and one of the questions before us in this appeal is whether or not he is entitled to recover this amount under the Workmen's Compensation Act in effect at the time of injury. The Referee held he was so entitled, but the

Workmen's Compensation Board reversed. The lower court affirmed the reversal and claimant has appealed.

Section 306(f) of the Workmen's Compensation Act (Act of May 14, 1949, P. L. 1369, 77 P.S. 531), in effect at the time of claimant's injury, provided:

"Whenever an employe shall have suffered the loss of . . . an eye, the employer shall furnish to the employe, in addition to the aforementioned surgical and medical services, medicines and supplies, an artificial . . . eye of a type and kind recommended by the doctor attending such employe in connection with such injury."

The Board and the lower court would interpret this section as limiting an employee to only one artificial eye. However, the required liberal interpretation of the Act[1] impels us to hold that this section imposed a continuing duty on the part of the employer to supply an artificial eye of a type and kind recommended by the doctor, and that as long as "an artificial . . . eye of a type and kind recommended by the doctor . . ." is needed, that eye must be supplied.

This interpretation is further buttressed by the provisions of section 413 of the Workmen's Compensation Act, which section has already been considered as an adjunct to section 306(f) by this court in *Primoli v. Philadelphia Bronze and Brass Corp.*, 211 Pa. Superior Ct. 224. Section 413 provides:

"The board, or referee designated by the board, may, at any time, modify, reinstate, suspend, or terminate an original or supplemental agreement or an award, upon petition filed by either party with such board,

---

[1] ". . . The workmen's compensation law, being remedial legislation, must be liberally construed and borderline interpretations resolved in favor of those it intended to benefit": *Carpinelli v. Penn Steel Castings Co.*, 209 Pa. Superior Ct. 390; *Wall v. Conn Welding and Machine Company*, 197 Pa. Superior Ct. 360, 367, 179 A. 2d 235, 238.

upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, That, *except in the case of eye injuries,* no agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the board within two years after the date of the most recent payment of compensation made prior to the filing of such petition". (Emphasis supplied)

Thus, eye injury cases were placed in a category separate and apart from other injury cases, and the two-year period of limitations for review was expressly stated as not applicable to them. The legislature obviously noted that physiological changes were inherent and prevalent in eye injury cases and were to be provided for beyond the two-year period applicable to other injuries.

In view of this distinction in section 413, how can we reasonably hold that the legislature in section 306(f) intended to limit the employer's duty to supplying only one eye. When the legislature in 1966 amended section 306(f) to expressly include "replacements" of an artificial eye, it was merely expressly providing what was implicit in the prior wording.[2]

The Referee with affirmance by the Board and the court below, denied claimant's recovery of his hospital bill ($101.15) and surgeon's bill ($100.00) in-

---

[2] In *Commonwealth v. Schuler,* 157 Pa. Superior Ct. 442, this court noted: *"The succeeding legislation merely defined the old crime in new terms."* (Emphasis supplied)

curred as a result of his 1962 eye removal operation and denied his claim for total disability after said operation from March 8, 1962 to May 3, 1963. The Referee reasoned that "claimant having not filed a claim for reimbursement for medical expense within two years of his last payment, is barred from any recovery therefor, as a matter of law." Here, the Referee erred because section 413 of the Act, as already quoted, specifically provides that the two-year period does not apply to eye injury cases.

We hold, therefore, that the lower court erred in affirming the Workmen's Compensation Board's reversal of the Referee's holding in favor of the claimant as to the $125.00 for the eye replacement and erred in affirming the Board's affirmance of the Referee's holding claimant not entitled to $201.15 of medicals and total disability benefits from March 8, 1962 to May 3, 1962 at the rate of $37.50 per week.

Order of the court below reversed and appellant's claim allowed.

WRIGHT, P. J., would affirm on the opinion of President Judge PALMER.

CONCURRING OPINION BY HOFFMAN, J.:

Judge CERCONE'S opinion is well-considered. Some other factors appear to me, however, which support his conclusion that the statute "was merely expressly providing what was implicit in the prior wording."

Both the Board and the lower court interpreted the amendment to §306(f) of The Workmen's Compensation Act to grant an additional right not originally available to the claimant, i.e., the right to receive replacement eyes. Based on this interpretation, they held that the rights granted under the Act to a claimant at the time of the injury are controlling, because an amendment of the statute relating to a substantive right does not apply to pre-existing injuries. *Polk v.*

*Western Bedding Co.,* 145 Pa. Superior Ct. 142, 20 A. 2d 845 (1941). Since the amendment granted additional substantive rights, the court held that the rights of claimant were fixed by the section of the Act in effect at the time of the accident.

While I agree with the general principles of law stated in the lower court's opinion, I am not convinced that the 1961 Amendment did, in fact, grant additional benefits to claimants.

The earlier Act did not say, as the insurance company contends, that the employee had a right to a *"single* artificial eye." Rather, it referred to an "eye of a type and kind recommended by the doctor attending such employe." The foregoing language does, of course, allow the interpretation suggested by the lower court. It may similarly be construed, however, to have intended not to limit the right to a single eye but to emphasize that the eye or eyes necessary would be those designated by the claimant's physician, rather than by the insurance company, since insurance companies and treating physicians often differed as to extent of treatment required. Such an interpretation is especially plausible, since artificial eyes often require replacement. It is highly realistic to assume, therefore, that the legislature would not have intended that the injured claimant receive only one eye.

Thus, an ambiguity appeared in the original statute as to whether a claimant would be entitled to more than one eye. The amendment, specifically allowing replacement eyes, may well have been designed to clarify the ambiguity rather than extend additional benefits. Certainly, however, in selecting between these alternative solutions we should incline toward the liberal interpretation and construction which grants the benefits to the claimant. *Carpinelli v. Penn Steel Castings Co.,* 209 Pa. Superior Ct. 390, 227 A. 2d 912 (1967). I would so hold and would, therefore, reverse the order

of the lower court and remand this case to the Board with directions that an award be entered allowing for claimant's replacement eye.