365 So.2d 937 (1978)
Sonja RANSON
v.
ORLEANS PARISH SCHOOL BOARD.
No. 9795.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
Writ Refused February 9, 1979.
*938 Trevor G. Bryan, Jefferson, Bryan & Gray, New Orleans, for Orleans Parish School Bd., defendant-appellant.
John P. Nelson, Jr., Larry Samuel, New Orleans, Richard G. Vinet, Gretna, Nelson, Nelson & Lombard, Ltd., New Orleans, for Sonja Ranson, plaintiff-appellee.
Before STOULIG, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This appeal is from a judgment awarding a teacher workman's compensation benefits, statutory penalties, and attorney's fees and court costs against the Orleans Parish School Board. The School Board has appealed, assigning four errors.
Sonja Ranson is a high school teacher who was injured on January 3, 1977 while returning to her classroom from the teacher's lounge at McMain High School. She was struck on the head by a glass apothecary jar thrown by an unknown assailant, was knocked unconscious and fell on the stairs. In addition to a severe laceration of her scalp, she suffered pains in her head and neck and her left wrist. The School Board paid most of her medical expenses, but refused to pay for some physical therapy sessions, a hydroculator, and a second wrist x-ray, totally $61.72.
The trial judge awarded plaintiff this sum, together with the statutory penalty and attorney's fees provided by L.R.S. 23:1201.2(A), and these awards are the bases of appellant's first two assignments of error. Appellant contends that these items were not necessary and simply reflect the whim of the employee for which it is not responsible. However, the trial judge "found absolutely no justification for the School Board not having paid the other medical expenses, trivial though they may seem". We agree. Considering the blow received and the fall, and the medical treatment resulting therefrom, the award is amply justified. The School Board's position seems to be basically that the reports received from the doctor were not specific enough to warrant payment, a position we find to be entirely baseless. Accordingly, we agree with the trial judge's award of the statutory penalties for arbitrary nonpayment of these items.
Appellant contends however that it is a public body and as such is not responsible for payment of such penalties. This argument is answered bluntly by Louisiana Revised Statute 23:1034 which expressly applies the provisions of the Workman's Compensation Laws to every person in the service of the state or political sub-divisions thereof, etc. and that "for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory". We hold that this includes the penalties *939 provided by L.R.S. 23:1201.2. We see no incompatibility between this statute and the constitutional policy of the state provided in the Constitution of 1974, Article 12 § 10. As we interpret those constitutional guidelines, the legislative authorization for state liability under the Workman's Compensation Statute are permitted.
The next issue is the entitlement of plaintiff for the expense of a wig, costing $174.90. The trial judge awarded this amount stating:
"I assign the following reasons for the judgment with respect to the wig. I recognize that it may not fit exactly the definition of a prosthetic device in the Workmen's Comp Act, but I hold it to be a device similar to one which might permit someone to ambulate without making themwell, such as a crutch, which I don't think is technically a prosthetic device or a walker, which is not technically a prosthetic device, but permits someone to operate and function in connection with employment, and I hold, having reviewed the photographs, that it would have been practically impossible for this lady to teach in that particular school for a significant period of time, certainly a matter of some weeks and perhaps a couple of months, without a wig and that under those circumstances, the wig was a necessary device to permit her to perform the duties of her employment, whether it was technically speaking a medical device or not."
L.R.S. 23:1203, providing for such matters, reads as follows:
"In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical and hospital services, and medicines, or any non-medical treatment recognized by the laws of this state as legal.
"The employer likewise shall furnish to the employee the necessary cost of repair to or the replacement of any prosthetic device damaged or destroyed by accident in the course and scope and arising out of such employment, including but not limited to damage or destruction of eyeglasses, artificial limbs, hearing aids, dentures, or any such prosthetic devices whatsoever."
The purchase of the wig came about in this manner. As a result of the blow to her head, plaintiff received large lacerations of her scalp, and it was necessary that a considerable part of her head be shaven in order to properly treat that wound. As a result, plaintiff had a bald spot in the front, right side of her head, constituting approximately 25% of the hair on that side. In the center of this bald spot were the sutured wounds showing considerable disfigurement. After approximately two weeks of treatment, plaintiff returned to her duties as a high school teacher, and because of the unsightly nature of her condition, she felt that she could not appear in class without having the area covered by a wig.
Although we cannot classify the wig as a medical service, we do believe, as stated by the trial judge, that this device permitted her to operate and function in connection with her employment. We must take notice that a teacher is required to appear before the pupils in her class in order to instruct them, and that the teacher's appearance is expected to be neat and attractive in order to serve as a model for the students' appearance. Certainly, the teacher would be distracted from her duties by her embarrassment and self-consciousness caused by appearing before the pupils with a partially shaved and wounded head. In a recent tort case, Horton v. Seligman & Late, Inc., 260 So.2d 731 (La.App. 4th Cir. 1972), we recognized the embarrassment that a professional woman suffered from loss of hair. In addition, we think some distraction would be caused to the students by the teacher's appearance in such a manner. Additionally, presuming that the policy of mitigation of damages applies at least in principle to Workman's Compensation cases, it is difficult for us to perceive how this teacher's good faith effort to rehabilitate herself quickly in order to return to work, and thus save workman's compensation weekly payments and the appointment of a substitute teacher should require her to *940 bear this expense of substituting false hair for her own hair during the period that her hair takes to regrow. We agree with the decision of the trial judge.
The last issue is the trial court's assessment of court costs against the School Board. After the rendition of the judgment below the Supreme Court of Louisiana handed down its decision in the case of Segura v. Louisiana Architect's Selection Board, 362 So.2d 498 (La.1978) and that case is decisive of the issue. The court held that costs of court are part of the "liability" to which a party cast in litigation is subject, and held that the plaintiff in that case was entitled to a judgment against the state for the costs incurred and advanced by him through all phases of the litigation. We agree with the trial judge's assessment of costs against the School Board.
For the reasons above assigned, the judgment appealed is affirmed.
AFFIRMED.