707 P.2d 333

**Stephen E. REGNIER, Petitioner Employee,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Ford Motor Company, Respondent Employer,**

**Ford Motor Company, c/o Employers Self Insurance Service, Respondent Insurance Carrier.**

**No. 1 CA–IC 3215.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 19, 1985.

Evans, Kitchel & Jenckes by Leon D. Bess, J. Stanton Curry, Phoenix, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel The Industrial Com'n. of Arizona, Phoenix, for respondent.

Lewis & Roca, by Merton E. Marks, Stephen M. Bressler, Phoenix, for respondent employer.

## OPINION

FROEB, Judge.

The issue in this special action review of an Industrial Commission award is whether the claimant is entitled to payment for medical procedures that could allow him to father children. Because the administrative law judge's determination was based, in part, upon erroneous conclusions of law, we set aside the award denying benefits.

On October 2, 1980, claimant Stephen Regnier, a test car driver for Ford Motor Company (respondent), was injured while at work. As a result of the industrial incident, claimant is a quadriplegic and is unable to have an erection and/or to ejaculate so as to become a father in the normal way. Since birth, claimant has had one undescended testicle.

Claimant's claim for benefits was accepted by respondent employer and he began to receive total temporary disability benefits. Approximately two years after the injury, claimant requested respondent to pay for medical procedures that could allow him to become a father. These procedures involve implanting an artificial spermatocele or sperm reservoir in claimant's only testicle, aspirating by hypodermic syringe the sperm collected, and artificially inseminating claimant's wife with the sperm. On February 11, 1983, a notice of claim status was issued denying payment for expenses incurred as a result of these procedures. Claimant protested and requested a hearing.

At hearing, claimant, claimant's wife and four physicians testified. Claimant testified that he and his wife began seriously to consider having children just prior to his industrial accident. He further stated that he understood and was willing to undergo the implantation procedure. Claimant's wife testified that she desired children and would be willing to undergo the artificial insemination procedure.

Reuven Geller, M.D., a board-certified urologist and member of the Pacific Coast Fertility and Sterility Society, testified that he had examined claimant eight times and had performed surgery on claimant's bladder in 1983. He stated that he had discussed with claimant the procedure to implant an artificial spermatocele in claimant's right testicle. Although Dr. Geller testified that he had never performed the procedure, he stated that he was familiar with it because he had observed it performed in a film and had discussed the procedure with physicians who had successfully performed it.[1] Dr. Geller stated that, after implanting the artificial spermatocele, claimant would have a ten to fifteen percent chance of fathering a child. He stated that absent the procedure claimant would be unable to father a child. On cross-examination, Dr. Geller indicated that he assumed claimant was producing viable sperm but stated that absent surgery no physician could state to a certainty whether claimant's testicle was actually producing sperm.

Robert Howard Tamis, M.D., a board-certified obstetrician and gynecologist, and the founder and director of the Arizona Fertility Institute, testified that he examined claimant's wife to determine whether she could become pregnant. After examining claimant's wife, X-raying her fallopian tubes and taking her basal temperature, he concluded that her fallopian tubes were unobstructed and that she was ovulating. Dr. Tamis, however, admitted that he had no certain evidence that claimant's wife could become pregnant and that additional tests should be performed to answer the question. Dr. Tamis also stated that there was no reason to believe that the medical procedures would not be successful, assuming that claimant's wife could become pregnant and that claimant was producing sperm.

William F. Osborn, M.D., a board-certified urologist who had performed surgery on claimant in 1981, testified on respondent's behalf. Dr. Osborn characterized the procedure to implant a spermatocele as experimental and explained that he had never heard of the procedure until respondent's counsel provided him with an article on the subject. Dr. Osborn testified that he did not believe claimant could produce sufficient sperm with which to artifically inseminate claimant's wife even if the artificial spermatocele were implanted. Although Dr. Osborn never examined claimant to determine whether claimant could produce sperm, he explained that claimant had an undescended testicle and, statistically, individuals with one undescended testicle may have impaired sperm production in the descended testicle.

Arthur Fishman, M.D., a board-certified urologist, also testified for respondent. Dr. Fishman stated that he never examined claimant but had reviewed claimant's medical file and read articles on the spermatocele procedure. He did not think it was appropriate to offer claimant hope of fathering children through the proposed procedures because the chance of success was slim.

The administrative law judge entered an award finding claimant not entitled to payment for the medical procedures. The award was affirmed on review and this special action followed.

On appeal, claimant argues that there are three reasons to set aside the award. First, the administrative law judge erred in concluding that a compensable medical benefit must result in an increased ability to function in the work place. Second, the administrative law judge erred in concluding that the procedures would not improve claimant's condition. Third, claimant contends the procedure was reasonably required because it was the only procedure whereby claimant could overcome his functional loss and father children.

---

1. Dr. Geller discussed the procedure with Dr. Shrirren of Hamburg, Germany, who explained that approximately 30 procedures, resulting in four pregnancies, had been performed in Europe. He also consulted three physicians practicing in the United States who had performed approximately 17 procedures, two of which were on paraplegics.

Respondent contends that when read in its entirety the award must be affirmed. Specifically, respondent argues that the proposed procedures are not reasonably required medical benefits, but rather are experimental procedures that could expose respondent to future liability.

Medical benefits are awarded pursuant to A.R.S. § 23–1062(A) which provides that:

Promptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of the injury, and during the period of disability. Such benefits shall be termed "medical, surgical and hosptial benefits."

The administrative law judge's rejection of the proposed procedure appears, in part, to have been based upon two erroneous conclusions of law. Relying upon *Heidler v. Industrial Commission*, 14 Ariz.App. 280, 482 P.2d 889 (1971), *Imrich v. Industrial Commission*, 13 Ariz.App. 155, 474 P.2d 874 (1970), and 2A Larson, *The Law of Workmen's Compensation* § 65.51, the administrative law judge concluded that "medical benefits that will not conceivably result in an increased ability to function in the work place" are not authorized under the statute. This conclusion has been expressly rejected in Arizona.

An injured employee is entitled to medical treatment even if the injury does not disable him for work or adversely affect his earning capacity. *Sneed v. Belt*, 130 Ariz. 229, 635 P.2d 517 (App.1981). *See also, State Compensation Fund v. Industrial Commission*, 25 Ariz.App. 316, 543 P.2d 154 (1975) (medical treatment for non-disabling psycho-neurosis is compensable) and *Engle v. Industrial Commission*, 77 Ariz. 202, 269 P.2d 604 (1954) (medical benefits are not affected by no loss of earning capacity). Additionally, the administrative law judge's reliance on *Heidler* and *Imrich* was misplaced. These cases stand for the proposition that a worker is not entitled to *income benefits* if a physical impairment causes no loss of earning capacity. *See* 2 Larson, § 61.11(B) (effect of income benefit rights on medical benefit rights) and § 65.51 (discussion of situations where income compensation benefits are not payable for non-disabling injuries).

Medical benefits are payable when they will improve an injured employee's condition. *See Home Insurance Company v. Industrial Commission*, 23 Ariz. App. 90, 530 P.2d 1123 (1975). The administrative law judge erroneously concluded that the medical benefits sought would not improve claimant's condition. The administrative law judge erred, however, in this finding. The proposed procedures, if successful, would replace a bodily function lost as a result of the injury. The fact that the procedures will not render claimant ambulatory or no longer a quadriplegic is irrelevant. Just as claimant's previous bladder surgery improved or restored a functional loss caused by the industrial injury, the procedures at issue here may restore claimant's ability to father children. We hold this to come within the definition of medical benefits set forth in A.R.S. § 23–1062(A).

While we have dealt with two erroneous conclusions reached by the administrative law judge, we have not discussed whether, on the evidence presented, an administrative law judge could find the procedures "reasonably required" within the meaning of A.R.S. § 23–1062(A). Whether a procedure is reasonably required under the statute is a question of fact. *Lowman v. Industrial Commission*, 54 Ariz. 413, 96 P.2d 405 (1939) (whether an injured employee's medical care as result of accident is or is not necessary, is a question of fact to be decided by the Commission). In the present case, the administrative law judge observed that the proposed procedures were novel and experimental and could expose respondent to future liability.[2] He

---

2. Although these factors are perhaps relevant in determining whether a proposed medical procedure is reasonably required, we reject respondent's argument that these factors require a

also indicated that the procedure may have a low probability of success and was not necessary to save claimant's life. Such factors may be relevant in determining whether a proposed procedure is reasonably required under the statute. However, from the award, we cannot determine whether the administrative law judge would have considered these factors sufficient in themselves to deny benefits or whether he would have nevertheless allowed benefits despite the presence of these factors. As a result it is necessary that the matter be reconsidered by the administrative law judge.

■ There is no question the benefits sought here push the limits of Arizona worker's compensation law as it presently stands. Yet, the body function for which a substitute is sought here, is no less cognizable than other prosthetic measures which replace lost body function. In our search for comparable precedent in other jurisdictions, we find the following cases allowing benefits in a variety of situations: *Crain Burton Ford Company v. Rogers*, 12 Ark. App. 246, 674 S.W.2d 944 (1984) (penile implant); *Bealer v. Simmons*, 216 Pa.Super. 263, 264 A.2d 193 (Pa.Super.1970) (replacement of artificial eye); *Peace River Electric Corporation v. Choate*, 417 So.2d 831 (Fla.App. 1 Dist.1982) (rent free use of wheelchair-accessible modular home); *Akers Auto Salvage v. Waddle*, 394 P.2d 452 (Okla.1964) (plastic surgery); *Ranson v. Orleans Parish School Board*, 365 So.2d 937 (La.App.1979) (wig); *Clark v. Fedders-Quigan Corp.*, 284 App.Div. 430, 131 N.Y. S.2d 575 (1954) (travel expenses to and from Florida for sufferer of emphysema); and *Squeo v. Comfort Control Corp.*, 99 N.J. 588, 494 A.2d 313 (1985) (construction of self-contained apartment for quadriplegic). While such awards differ greatly, we believe that as medical treatment progresses, allowance of a wider range may be appropriate even where the beneficial effects may not always be assured. *See* 2

Larson, §§ 61.13(A) and (F), 61.14. This is particularly true in light of the rule that workers compensation statutes are to be given liberal interpretation in favor of the worker. *Bill Breck Dodge, Inc. v. Industrial Commission of Arizona*, 138 Ariz. 388, 675 P.2d 275 (1983).

■ Respondent employer argues that the requested procedures are experimental and that an employer is not required to provide experimental modalities under Arizona Worker's Compensation Law. Although new medical techniques frequently are described as experimental, that alone does not mean they cannot be found compensable as a medical benefit under A.R.S. § 23-1062(A). The experimental nature of a new medical technique is one among many factors the administrative law judge must take into account in determining if it is reasonably required under the statute.

■ We hold therefore, that the evidence presented would support an award of medical benefits covering the cost of implanting an artificial spermatocele in claimant and whatever further procedures are appropriate to the artificial insemination of claimant's wife. Nevertheless, under the rules pertaining to review and remand of worker's compensation reviews, it is necessary for this court to set aside the award which will require the parties to present, anew, their evidence before the administrative law judge who must determine whether, considering the evidence, the procedures sought are "reasonably required" under all the circumstances. The same evidence may be presented or there may be new evidence. We merely hold that the administrative law judge could, but would not be compelled, to find the evidence in the present record sufficient to justify the benefits sought.

The award is set aside.

CORCORAN and OGG, JJ., concur.

---

finding that the procedure was not reasonably required. In any event, respondent's contention that the authorization of the procedure could subject it to future liability, is highly speculative.