595 A.2d 781

Scott A. TOBIAS, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (NATURE'S WAY NURSERY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1991.

Decided July 25, 1991.

Petition for Disallowance of Appeal Denied Nov. 25, 1991.

Daniel Stern, Harrisburg, for petitioner.

Joseph C. Phillips, Harrisburg, for respondent.

Before CRAIG, President Judge, and DOYLE, J., and BARRY, Senior Judge.

DOYLE, Judge.

Petitioner, Scott Tobias (Claimant), appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision dismissing Claimant's *pro se* "Petition to Review Notice of Compensation Payable." The petition requested reimbursement for medical and transportation expenses incurred by Claimant and his wife in their attempt at conception through artificial insemination allegedly made necessary by his work-related injury.[1]

The facts are as follows: On February 3, 1984, Claimant fell from a tree while performing his job at Nature's Way Nursery (Employer). He sustained a spinal cord injury and received Workmen's Compensation benefits until April 2, 1987, when he returned to work at wages equal to or in excess of those he had received when he sustained the injury. Pursuant to a Supplemental Agreement dated July 28, 1987, compensation payments were suspended as of July 2, 1987. Employer remained responsible for Claimant's necessary and reasonable medical expenses if they were causally related to the work injury and, as far as we can tell

---

1. Claimant's suggestion that his *pro se* petition should be characterized as a penalty petition, shifting the burden of proof for the nonpayment of all of the medical costs for Claimant and his wife, is without merit.

from the record, Employer continued to pay for Claimant's personal medical expenses related to the subject matter of the petition with the exception of expenses incurred by the participation of Claimant's spouse.

The case itself originated in an unusual manner because Workmen's Compensation law requires an employer to pay all medical expenses unless and until they are found to be unnecessary or unreasonable. *Fuhrman v. Workmen's Compensation Appeal Board (Clemens Supermarket)*, 100 Pa.Commonwealth Ct. 577, 515 A.2d 331 (1986); *petition for allowance of appeal dismissed as having been improvidently granted*, 518 Pa. 59, 540 A.2d 267 (1988). Such a determination is usually made as a result of the employer filing a petition under Section 306(f)(2)(ii) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(2)(ii), testing the reasonableness of the claimant's medical procedure or the costs already incurred for medical treatment. Although Claimant does not tell us directly why he filed what could be characterized as a pre-authorization petition, we may infer from the wording of the petition that it was the unusual subject matter of the request (reimbursement for an artificial insemination procedure), and the novelty of the issue in Pennsylvania Workmen's Compensation law that may have prompted his action. Nevertheless, it is well known in Pennsylvania that the form of the petition is not controlling in Workmen's Compensation. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990), and we will address the merits of the appeal without regard to the form of the petition.

It was not unreasonable for Claimant, due to the unusual subject matter of the request, to hesitate to incur additional expenses without a ruling on the issue, and it was not unreasonable for Employer to assume that it had no duty to pay for the medical expenses of Claimant's spouse, who was not its employee, and therefore not assume an obligation to file a § 306(f)(2)(ii) petition. Claimant acknowledges in his

brief that to the date of the referee's decision, Employer paid Claimant's medical expenses in relation to his own medical procedure, and does not challenge the reasonableness of Employer's refusal to pay Claimant's wife's expenses.

Claimant's *pro se* petition, filed on August 15, 1988, states the following:

In February of 1984, due to work related accident I, Scott Tobias, suffered a spinal cord injury. Until now PMA Group has covered all expenses related to this injury. This injury has caused retrograde ejaculation. In order to conceive children Dr. Hirsch has prescribed medications, catheterization and sperm washes in order to perform artificial insemination. If this method fails Dr. Hirsch will perform transrectal electro-ejaculatory stimulation. Working with Dr. Hirsch is Dr. Goldfarb who will undergo tests on my wife in order to determine exact time of ovulation and then use the sperm obtained by Dr. Hirsch, to achieve pregnancy. The procedures will be done monthly and require payment each month. I hereby petition that all medical costs for both my wife and myself, be covered by Workmen's Compensation until a pregnancy is achieved. This would also cover any future attempts at other pregnancies.[2]

The record contains testimony of Claimant and his wife, a report from Claimant's treating physician, Dr. Irvin H. Hirsch, dated November 17, 1988, (this report included two medical journal articles describing the condition being treated and the methods being used and/or considered), and a report from Employer's expert, Dr. Thomas Rohner, dated December 15, 1987. Dr. Rohner's report was the only evidence presented by Employer. In addition, by an order

---

**2.** Retrograde ejaculation is the backward ejaculation of seminal fluid which then enters the bladder. Retrograde ejaculate is collected by emptying the bladder (in this case by catheterization) after ejaculation. The urine is then buffered and viable sperm can be harvested. Raymond, New Use for Old Method of Inducing Ejaculation May Give Hope of Fatherhood to Some Spinal Cord–Injured Men, 258 J.A.M.A. 743 (1987).

of this Court, a letter dated February 21, 1989, was entered into the record by stipulation. This letter concerned choice of treatment methods for Claimant, and ruled out a method which will be discussed later called electroejaculation.[3]

Because there are several complicated issues involved, we quote directly from the referee's decision, filed September 15, 1989, as follows:

## FINDINGS OF FACT

8. Claimant's partial dysfunction has not in any way impaired his ability to work. Since April 2, 1987, claimant has been employed continuously at wages equal to or in excess of his pre-injury wage.

9. Your Referee finds that the insemination procedure in this case is experimental in nature, is not causally related to the February 3, 1984 injury, and [is] neither reasonable nor necessary in that it will have no effect on claimant's earning power.

## CONCLUSIONS OF LAW

. . . .

2. Claimant herein has failed to meet his burden of proof to establish that the insemination procedure is causally related to the work-related injury of February 3, 1984.

3. Claimant here has failed to meet his burden of proof to establish that the insemination procedure is necessary and reasonable.

4. Claimant herein has failed to meet his burden of proof to establish that his condition has affected his earning potential.

5. Claimant herein has failed to meet his burden of proof to establish that claimant's wife was an employee

**3.** The relevant portion of this report reads as follows:
"Apparently there was a bad experience with another patient regarding the electroejaculation procedure. As a result, Dr. Hirsch intends to utilize the alternative procedure described in page two of his November 17, 1988 report, namely, penile vibratory technique...."

within the meaning of the Pennsylvania Workers' Compensation Act, as amended, and entitled to collect medical reimbursements.

## ORDER

AND NOW, this 15th day of September, 1989, the Petition for Review of Scott A. Tobias is hereby marked DISMISSED.

The record is closed and the file is returned to the Bureau.

The issues raised by Claimant were (1) whether or not there was substantial evidence to support the referee's finding that the medical procedure was not causally related to the work-related injury, (2) whether or not the referee erred as a matter of law in requiring Claimant to prove that his injury affected his earning capacity as a condition to receipt of medical benefits, and (3) whether or not the referee erred in allocating the burden of proof to claimant to prove that (a) the medical expenses were causally related to the injury, and (b) that they were necessary and reasonable.[4]

 Both the findings and the conclusions of law reproduced above are replete with error. The referee seems to base finding No. 9 on the alleged "experimental nature" of the medical procedure. Even if the particular procedure could be described as experimental in nature, this would not render the medical expenses unreasonable or unnecessary per se, nor does experimentality pertain to whether or not a procedure is causally related to an injury. Moreover, there is no evidence of record that the method of choice here *was* experimental because, as attested to in a letter which became part of the original record by stipulation of the parties, Claimant's doctor had rejected the electroejacula-

4. Employer argues that the issue of the allocation of the burden of proof is waived as it is being raised for the first time on appeal. We have reviewed the Petition for Appeal to the Board and are satisfied that the issue was sufficiently preserved.

tion method as an option and that was the only method referred to by either medical witness as "experimental."[5]

We assume that in finding No. 9, and the resulting conclusions, the referee is addressing the necessary issue of whether or not Claimant's medical expenses regarding treatment of his sexual dysfunction has a nexus with the existing residual disability from his spinal cord injury. This Court has held that where new, seemingly unrelated symptoms develop, allegedly stemming from compensated injuries, but not having an obvious connection, unequivocal medical testimony is required to establish the nexus. *Hilton Hotel Corp. v. Workmen's Compensation Appeal Board (Totin)*, 102 Pa.Commonwealth Ct. 528, 518 A.2d 1316 (1986).

Although the connection between an ejaculatory dysfunction and a spinal cord injury is perhaps obvious to the medical community because, as stated in the record, this symptom is seen in approximately 90% of spinal cord injured men, the question is whether or not it is "obvious" as applied to the causation issue in workmen's compensation. "Obvious" in this latter setting involves a nexus that is so clear that an untrained layperson would not have a problem in making the connection between the injury and a disability. This discernment often involves a "natural and probable" development, such as was required by this Court in *Hilton* in reference to mental illness, and could sometimes involve an immediacy of occurrence such as an immediate

5. The referee failed to discern between two procedures which are used in treating ejaculatory dysfunction. Dr. Hirsch's report and attached printed material referenced two methods of obtaining sperm for insemination. One method, labeled electroejaculation, involves inducing ejaculation by use of a rectal electric probe and requires general anesthesia and operating room expenses; the other method is induced ejaculation by penile vibration which does not require either. Although we note the referee's failure to distinguish between the two, the issue of experimentality of procedure in this case is rendered moot (for whatever limited relevance it might have had) because Claimant's physician opted not to utilize the electroejaculation method, the only method referred to as experimental by either medical expert. This reference can be found in Dr. Rohner's report as reproduced in footnote 3.

back injury following heavy lifting. *See Davis v. Workmen's Compensation Appeal Board (United Parcel Service)*, 92 Pa.Commonwealth Ct. 294, 499 A.2d 703 (1985).

█ Because in this case the connection is not obvious enough to be elucidated without the help of the medical profession, Claimant has the burden of proving the connection by unequivocal medical evidence. Such testimony is of record, however, in the written report submitted by Dr. Hirsch where he says:

> Scott Tobias was initially evaluated by me on 5/10/88. He had been seen at the Hershey Medical Center for treatment of ejaculatory dysfunction that RESULTED FROM SPINAL CORD INJURY IN 1984.... His diagnosis is retrograde ejaculation secondary to spinal cord injury.... I believe that Scott's ejaculatory dysfunction is a direct result of his fall in 1984 with resultant cervical spinal cord injury.

The report of Employer's expert, Dr. Rohner, reinforced rather than contradicted this position. Dr. Rohner reported, "I do suspect that his failure to ejaculate and achieve complete erections are related to his incomplete spinal cord injury in 1984."[6] Claimant certainly provided, therefore, the necessary testimony to establish the connection between his ejaculatory dysfunction and his spinal cord injury of 1984 and met his burden of proof in this regard.

█ Next, we address the issue of whether or not the referee erred in finding that the insemination procedure was not necessary or reasonable, and his conclusion that Claimant failed to meet his burden of proof to establish the same. First, the referee erred in finding that the procedure was not reasonable or necessary because it would have no effect on Claimant's earning power. This issue was settled

6. We reject Employer's argument that the referee merely decided a credibility question in favor of its expert and that the words "I do suspect" mean that Employer's expert at best gave an unequivocal opinion that the sexual dysfunction was not work-related. Employer in making this argument has clearly taken the words "I do suspect" out of context.

long ago. As of the effective date of the 1972 amendments to the Act, a showing that an injury resulted in loss of earning power is no longer required in order to permit an employee to receive reimbursement for medical expenses. *Deremer v. Workmen's Compensation Appeal Board,* 61 Pa.Commonwealth Ct. 415, 433 A.2d 926 (1981). We note that since 1978 amendments to the Act, Section 306(f)(4), 77 P.S. § 531(4), now reads:

> [T]he employer shall provide payment for medicines and supplies, hospital equipment, services and supplies and orthopedic appliances and prostheses.... *The provisions of this section shall apply in injuries whether or not loss of earning power occurs.* (Emphasis added.)

■ Second, the referee erred in allocating the burden of proof. The burden of proof is on the employer to prove that medical expenses are *not* necessary or that they are *un*reasonable. *Lehigh Valley Refrigeration Services v. Workmen's Compensation Appeal Board (Nichol),* 120 Pa.Commonwealth Ct. 434, 548 A.2d 1321 (1988). Moreover, after reviewing the record, we fail to see how Employer was in any way *precluded* from presenting evidence that the procedure was either unnecessary or unreasonable. To the contrary, it simply presented no evidence on this issue; indeed, its own expert never even disputed the reasonableness or necessity of the procedure in his report.

■ Third, a fair application of the pertinent provision of the Act, Section 306(f)(1), and the case law interpreting the same, leads us to conclude that the expenses of Claimant were necessary and reasonable. Section 306(f)(1) of the Act, 77 P.S. § 531(1), states that "[t]he employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed: ..." The record reflects, and we so hold, that Claimant's medical expenses were necessary and reasonable because both of the medical reports confirm that Claimant's sexual functioning and concurrent natural ability to father children were impaired by his work-related injury and that in order

to enable him to carry out his inherent right to attempt to have children an artificial insemination procedure was necessary. We believe that the procedure chosen is merely the method for replacing a lost body function, in some respects it is even analogous to a customized prosthesis. *See generally Bowlaway Lanes v. Workmen's Compensation Appeal Board (Caparosa)*, 90 Pa.Commonwealth Ct. 534, 496 A.2d 99 (1985).

■ Fourth, it goes without saying that this procedure cannot be carried out without the participation of Claimant's spouse who must be considered with him in the act of procreation. We have often held that expenses, even if not an actual part of the treatment, are compensable if they are incidental to the treatment. *See e.g., Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Ostir)*, 104 Pa.Commonwealth Ct. 7, 520 A.2d 1261 (1987). The participation of Claimant's spouse in the procedure is not merely incidental but essential; without her participation the treatment would serve no purpose. We thus conclude that reasonable and necessary expenses for the procedure, which by its very nature requires two, are covered under the Act.[7]

This is a case of first impression in Pennsylvania, and the issue is whether or not the procedure of artificial insemination, when necessitated by sexual dysfunction caused by a work-related injury, is compensable under the Act. The only case on point that our research has unearthed was decided by the Court of Appeals of Arizona. *See Stephen E. Regnier v. Industrial Commission of Arizona (Ford Motor Company)*, 146 Ariz. 535, 707 P.2d 333 (1985). In *Regnier*, the Arizona Supreme Court reversed and remanded a lower court's denial of benefits for artificial insemination opining as follows:

7. We agree with Employer that Claimant's spouse is not an employee within the intent of the Act. That fact is irrelevant, however. Claimant is entitled to treatment for *his* injury. The medical procedures performed on his spouse are part of the treatment to make *him* whole.

The proposed procedures, if successful, would replace a bodily function lost as a result of the injury. The fact that the procedures will not render claimant ambulatory or no longer a quadriplegic is irrelevant. Just as claimant's previous bladder surgery improved or restored a functional loss caused by the industrial injury, the procedures at issue here may restore claimant's ability to father children. We hold this to come within the definition of medical benefits set forth in [Arizona law].

*Regnier*, 146 Ariz. at 538, 707 P.2d at 336.

We adopt the rationale of the Arizona Supreme Court as our own and hold that artificial insemination is a compensable medical expense. In the case at hand, Claimant has met his burden of proof and has provided uncontroverted evidence of the work-related cause of his developing medical expenses, and the record reflects the necessity and reasonableness of the treatment inclusive of the participation of his spouse. Accordingly, we reverse the order of the Board.

## ORDER

NOW, July 25, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is reversed.