[743 NYS2d 212]

In the Matter of the Claim of STEPHEN SPYHALSKY, Respondent, v CROSS CONSTRUCTION, Appellant. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, June 13, 2002

**APPEARANCES OF COUNSEL**

*Ryan, Roach & Ryan P.C.,* Kingston (*Richard T. Cahill Jr.* of counsel), for appellant.

*Eliot Spitzer, Attorney General,* New York City (*Howard B. Friedland* of counsel), for Workers' Compensation Board, respondent.

*Ralph M. Kirk,* Kingston, for Stephen Spyhalsky, respondent.

**OPINION OF THE COURT**

PETERS, J.

In this case of first impression, the issue distills to whether Workers' Compensation Law § 13 (a) requires a workers' compensation carrier to be liable for a procedure involving the extraction of sperm from an injured worker and intrauterine insemination of his wife where it has been determined that it is both medically necessary for procreation and that claimant is suffering from a causally related injury resulting in an inability to procreate without such procedure. We believe that it does.

In January 1995, claimant suffered a compensable work-related back injury that required him to undergo discectomy and spinal fusion surgery in May 1997. As a result of sympathetic nerve injury secondary to claimant's surgery, claimant was ultimately found to suffer from retrograde ejaculation.* He was informed by his urologist that if the initial form of treatment did not evoke forward ejaculation, semen washing and intrauterine insemination would be necessary if claimant sought to impregnate his wife. When the initial treatment proved unsuccessful, claimant's subsequent urologist recommended a different treatment to spur antegrade ejaculation. This urologist reiterated that should this method prove unsuccessful, semen washing followed by intrauterine insemination would be necessary.

In July 2000, claimant reopened his previously closed case before the Workers' Compensation Board, which had authorized ongoing "[m]edical treatment and care, as necessary," to obtain preauthorization for intrauterine insemination. At the hearing, the Workers' Compensation Law Judge amended claimant's work-related injury to include consequential retrograde ejaculation. The Workers' Compensation Law Judge found that the "loss of the ability to naturally father a child also represents an injury * * * for which [claimant] is entitled to treatment," thereafter authorizing semen washing and intrauterine insemination if recommended by his urologist. The Board affirmed these findings, prompting this appeal.

---

* Retrograde ejaculation is defined as a "[c]ondition in which semen is forced backward into the bladder due to failure of the sphincter muscle of the bladder to close at orgasm; may result from neurological disease, a surgical operation upon the neck of the bladder and prostatic urethra, or certain antihypertensive medications" (Attorney's Illustrated Medical Dictionary [1997]).

Preliminarily, we reject any contention that the issue before us is not ripe for review since it has not yet been medically determined whether intrauterine insemination will be necessary. The Board articulated its final position on the issue; clearly, no further action would be required by claimant if his urologist concludes that semen washing and intrauterine insemination should proceed. For these reasons, we find that the issue is properly before us (see generally, Matter of Ward v Bennett, 79 NY2d 394, 400; Compass Adjusters & Investigators v Commissioner of Taxation & Fin. of State of N.Y., 197 AD2d 38, 41).

It is a "fundamental principle" that the Workers' Compensation Law should be construed liberally "to accomplish * * * [its] economic and humanitarian object[ives]" (Matter of Smith v Tompkins County Courthouse, 60 NY2d 939, 941; see, Matter of Morrell v Onondaga County, 244 AD2d 695, 697; Matter of Manning v Niagara Mohawk Power Corp., 198 AD2d 561, 562), and there exists a litany of judicial determinations exemplifying both the broad and liberal interpretation of these salubrious objectives (see, e.g., Matter of Rochel v Gardiner Manor Mall, 259 AD2d 840; Matter of Clark v Fedders-Quigan Corp., 284 App Div 430). Workers' Compensation Law § 13 (a) requires an employer to bear the cost of medical care and treatment "for such period as the nature of the injury or the process of recovery may require." In determining whether the procedure at issue falls within the parameters of this provision, the Board properly considered a 1925 Industrial Board decision that required a workers' compensation carrier to pay for artificial milk to feed an infant whose injured mother could no longer breast feed (see, Matter of Moore v Maitland, 32 NY St Dept Rep 409). That decision found the carrier liable "as the result of the impairment of the function of lactation following and resulting from the accidental injury" (id. at 410). We glean additional guidance from decisions from Arizona and Pennsylvania, concerned particularly with artificial insemination, which held that efforts to overcome the loss of a bodily function, indisputably resulting from a work-related injury, must not be any less cognizable than other customized prosthetic devices readily financed to replace a lost bodily function (see, Regnier v Industrial Commn. of Ariz., 146 Ariz 535, 707 P2d 333; Tobias v Workmen's Compensation Appeal Bd. [Nature's Way Nursery], 141 Pa Commw 438, 449, 595 A2d 781, 786, lv denied 529 Pa 628, 600 A2d 543).

Claimant's damage to his reproductive system and the loss of a bodily function was, indisputably, a consequential limita-

tion resulting from an accidental injury. Viewing both the nature of the injury and the purpose of Workers' Compensation Law § 13 (a), it is clear that medical treatment must be provided "to render [him] whole, as nearly as could be" (*Matter of La Rose v Hof*, 28 AD2d 185, 187) or, in the words of the statute, as "the process of recovery may require" (Workers' Compensation Law § 13 [a]).

It is beyond cavil that claimant's injury impedes his ability to foster a pregnancy, requiring his doctors to prescribe various courses of treatment to restore normal ejaculation. Should there be a failure in the prescribed course of treatment, evidence established that claimant's doctors opined, without contrary medical evidence, that the only way to bypass this impediment is by an artificial transfer of his semen to his wife's uterus—the procedure authorized by the Board. In reviewing the propriety of this determination, we need not address either the employer's newly raised contention that there was no evidence that claimant had the ability to biologically father a child prior to the injury (*see, Matter of Gardner v Structure Tone of NY*, 272 AD2d 794, 795) or that the treatment was improperly authorized since it does not affect his ability to return to the work place; we do not read Workers' Compensation Law § 13 (a) in such a constricting manner (*see generally, Acevedo v Consolidated Edison Co. of N.Y.*, 189 AD2d 497, *lv dismissed* 82 NY2d 748; *Matter of La Rose v Hof, supra*; *Matter of Belmont v Paramount Publix Corp.*, 246 App Div 661).

CREW III, J.P., SPAIN, CARPINELLO and ROSE, JJ., concur.

Ordered that the decision is affirmed, without costs.