David **ZUBACK**, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (PARADISE VALLEY ENTERPRISE LUMBER CO.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 18, 2005.

Decided Jan. 9, 2006.

Reargument Denied March 6, 2006.

Nariman P. Dastur, Pittsburgh, for petitioner.

Patrick A. Sheldon, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

David Zuback (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge's denial of Claimant's penalty petition.

On October 11, 1976, Claimant sustained a work-related injury while in the course of his employment with Paradise Valley Enterprise (Employer). Claimant suffered the loss of his left arm, his left leg, and two toes on his right foot. After his injury, Employer installed two stair glides in Claimant's home which allowed him to move from floor to floor in his three-story house.

On January 24, 2003, Claimant petitioned for penalties and alleged that Employer "has violated the Workers' Compensation Act by failing to pay for reasonable, necessary causally related medical expenses ... [s]pecifically, ... employer has refused to pay for repairs to claimant's stair glide. Claimant is seeking a penalty in the amount of fifty percent ... of the cost of repairs and counsel fees." Penalty Petition, January 24, 2003, at 2; Repro-

duced Record (R.R.) at 2a. Employer and the State Workers Insurance Fund (SWIF) denied all allegations. Answer To Penalty Petition, February 12, 2003, at 1; R.R. at 3a.

At a hearing, Zuback testified that the two stair glides no longer operated properly:

They would quit. They would stop and not go any further. One started leaking oil. It's making a lot of noises now. Both are missing ——[and] are in need of glide wheels that are on them. The one you have to lean way back on it to keep it from falling over. The safety switches are bypassed. That's why they'd stop. The safety switches would short out. They're bypassed so that the unit will work now.

Notes of Testimony (N.T.), October 14, 2003, at 10–11; R.R. at 58a–59a. Zuback informed SWIF on numerous occasions during a four-year period that the two stair glides needed repaired. N.T. at 11; R.R. at 59a.

Employer presented the deposition testimony of Kathleen F. Loriso (Loriso), President of Occupational Resource Specialist. Loriso stated that Claimant lives in a three-story home and that there is "the kitchen and a small living room on the first floor ... [o]n the second floor there is another living area and a bedroom ... I don't know if the bedroom is on the second floor, but I know there's another story on the third floor." Deposition of Kathleen F. Loriso (Loriso Deposition), July 31, 2003, at 13; R.R. at 81a. Loriso stated that "[f]rom what I observed and from what I have been told, his [Claimant] stair glides needed to be either fixed or replaced." Loriso Deposition at 14; R.R. at 82a. Loriso obtained two bids. "Marshall Elevators said ... they wouldn't even give us a bid to repair them ... [b]ecause they didn't install them and they didn't even

manufacture this particular model anymore." Loriso Deposition at 16; R.R. at 84a. Marshall Elevators submitted a bid of $5,820.00 to replace the stair glides. Loriso Deposition at 27; R.R. at 95a. "McArdle [Surgical], who was the company that originally installed the first set of stair glides ... [said] that to repair them ... would be anywhere from $2,800 to $3,200." Loriso Deposition at 16; R.R. at 84a. However, McArdle cautioned that if it "would fix it, it might work for awhile, but they couldn't make any guarantees to the whole overall integrity of the stair glide." Loriso Deposition at 17; R.R. at 85a. McArdle suggested that the stair glides be replaced and it submitted a bid of $5,590.00 to complete the job. Loriso Deposition at 26; R.R. at 94a. Loriso concluded that as of September 28, 1999, the repairs for the stair glides were cancelled. Loriso Deposition at 38; R.R. at 106a.

The WCJ made the following relevant findings of fact and conclusions of law:

7. Based upon the competent, credible and sufficient evidence of record, this Judge finds that the claimant has failed to sustain his burden of proving that the employer violated any terms or provisions of the Act. In so finding, this Judge notes that in accordance with its obligation under Section 306(f.1)(1)(i) of the Act, the employer paid for certain modifications to the claimant's residence following his work injury, which included the installation of two stair glides. In his Penalty Petition, the claimant raises an issue regarding the reasonableness, necessity and/or causal relationship of repairs that are currently needed to the claimant's stair glides. Although these issues may be proper subjects of other types of Petitions, this Judge does not find them proper subjects of a Penalty Petition. The employer provided modifications to the claimant's residence in

accordance with its obligations under the Act, and this Judge finds no violation.

8. The claimant has a Contingent Fee Agreement with his counsel, John R. DeAngelis & Associates, P.C., in the amount of twenty (20) percent of benefits awarded. The Agreement is reasonable and is approved.

9. In support of the request for an award of attorney's fees for unreasonable contest, claimant's counsel submitted an itemized statement of services rendered in this matter. However, because this Judge finds that the employer committed no violation of the terms and provisions of the Act, the employer's contest of this matter is found to be reasonable.

WCJ's Decision, December 29, 2003, Findings of Fact (F.F.) Nos. 7–9 at 1–2. The WCJ denied the penalty petition.

The Board affirmed and concluded:

The WCJ determined that Defendant [Employer] provided modifications to Claimant's residence in accordance with its obligations under the Act, and found no violation. (Finding of Fact 7).

A defendant [Employer] is obligated to provide only a one-time expenditure on a claimant's residence for necessary modifications, not repeated expenditures to update existing modifications.... We also note that Claimant did not allege that the stair glides were not working, and there is no allegation in the record that they were inoperable, inadequate or unsafe. Under these facts, we cannot agree that Claimant was denied any rea-

sonable and necessary accommodations under the Act. (citation omitted).

Board's Opinion, May 23, 2005, at 4–5.

## I. Whether The WCJ Erred When He Determined That Employer Was Not Responsible For The Replacement Of The Two Stair Glides?

 Initially, Claimant contends [1] that he was not seeking additional modifications to his house but only the replacement of his two stair glides.

Section 306(f.1)(1)(ii) of the Workers' Compensation Act (Act) [2], 77 P.S. 531(1)(ii), provides:

In addition to the above service, *the employer shall provide payment for* medicines and supplies, hospital treatment, services and supplies and *orthopedic appliances,* and prostheses in accordance with this section. Whenever an employe shall have suffered the loss of a limb, part of a limb ... the employer shall also provide for an artificial limb ... or other prostheses of a type and kind recommended by the doctor attending such employe in connection with such injury and any replacements for an artificial limb ... which the employe may require at any time thereafter, together with such continued medical care as may be prescribed by the doctor attending such employe in connection with such injury as well as such training as may be required in the proper use of such prostheses .... (emphasis added).

In *Rieger v. Workmen's Compensation Appeal Board (Barnes & Tucker Company),* 104 Pa.Cmwlth.42, 521 A.2d 84 (1987), this Court reviewed the term "orthopedic appliances" in Section 306(f)(4) of the Act,

---

1. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglin-*

*sky v. Workmen's Compensation Appeal Board (Penn Installation),* 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

2. Act of June 2, 1915, P.L. 736, *as amended.*

77 P.S. § 531.[3] In *Rieger*, Richard Reiger (Reiger) suffered a spinal injury that had been "diagnosed as a 12–L1 fracture and dislocation of the spine with partial tonus-canuda equinal injury." *Id.* at 85 n. 1. Reiger underwent "surgery where he had a decompression laminectomy and fusion performed and Harrington rods inserted to add stability to the spine." *Id.* at 85. As a result of Reiger's injury, an occupational therapist recommended "the placement of bars and ramps in the bathroom and kitchen areas ... the widening of doorways to facilitate passage of the wheelchair, the placement of ramps in the rear entrance ... an enlargement of the claimant's [Reiger's] garage [and][i]n addition hand controls installed in his automobile...." *Id.* at 85. These changes to the house cost $433.02 and to the automobile, $359.34. Barnes & Tucker Company (Company), the employer, refused to pay these bills and Reiger filed a claim petition. The referee [4] denied the petition and determined that these costs were not covered under Section 306 of the Act. The board affirmed.

On appeal, this Court reversed:

No prior reported cases has ever construed the terms 'orthopedic appliances' or 'supplies' before. It is certainly clear, however, that a wheelchair is, by common usage, an orthopedic appliance. It is undisputed that the claimant [Reiger] must use a wheelchair for much of his ambulation. It is likewise clear that all of the remodeling done upon the claimant's home was to permit him to utilize his wheelchair. There can be no doubt that bars placed within a bathroom and ramps leading to and from a home are certainly devices specifically designed for the particular use of wheelchair users. *It is likewise certain that devices to aid in the use of wheelchairs fit within the above definition of 'orthopedic.'* We must, therefore, conclude that the remodeling done upon claimant's [Reiger's] home in the instant case is within the definition of 'orthopedic appliance.' Likewise, we determine that hand controls in automobiles are, in the instant setting ... qualify as an 'orthopedic appliance.' The Board has clearly committed an error of law in excluding the claimant's [Reiger's] costs for remodeling and installation of hand controls. (emphasis added).

*Rieger*, 521 A.2d at 86.

Later, in *Bomboy v. Workmen's Compensation Appeal Board (South Erie Heating Co.)*, 132 Pa.Cmwlth.169, 572 A.2d 248 (1990), this Court revisited *Rieger*. In *Bomboy*, Richard Bomboy (Bomboy) suffered a work-related injury that rendered him a paraplegic. South Erie Heating Company (South Erie) "provided for the installation of hand controls on the claimant's [Bomboy's] automobile and for the modification of claimant's basement into a wheelchair-accessible living space, with a bedroom and a bathroom." *Id.* at 248. In 1988, Bomboy requested that *additional modifications* be made to his house "including an attached garage, a wheelchair lift, and utility cost reimbursements." (emphasis added). *Id.* at 248. South Erie denied payment for the requested modifications and Bomboy petitioned for benefits. The referee denied the petition and the Board affirmed.

On appeal, this Court affirmed:

---

**3.** Section 306(f)(4) of the Act, 77 P.S. § 531, was renumbered Section 306(f.1)(1)(ii), 77 P.S. § 531(1)(ii), by Act 44 of 1993 on July 2, 1993. This section remains essentially the same.

**4.** WCJs were formerly titled referees.

We note that the claimant's home in Reiger had not been previously modified to accommodate his wheelchair, as was the claimant's [Bomboy's] home here....

However, in the present case, the employer [South Erie], at the claimant's [Bomboy's] request, had previously modified the claimant's [Bomboy's] home by installing a wheelchair-accessible bedroom and bathroom in the claimant's [Bomboy's] basement. These modifications, costing approximately $5,000.00, converted the claimant's [Bomboy's] basement into living quarters for the claimant [Bomboy].

Although we agree that Reiger requires an employer to provide home modifications at the employer's expense, such modifications are limited to a '... one-time expenditure.' In this case, the employer [South Erie] previously modified the home in which the claimant [Bomboy] presently lives. Thus, no additional modifications are warranted under Reiger.

....

Because additional home modifications would result in a substantial cost burden on the employer, and because the claimant [Bomboy] proposed no alternatives, we conclude that Reiger does not support the claimant's [Bomboy's] request for an attached garage and a wheelchair lift.

*Bomboy*, 572 A.2d at 250.

Here, this Court disagrees that *Bomboy* applies to the present facts. In *Rieger* and *Bomboy* this Court considered that modifications to a house such as the placement of bars and ramps, the enlargement of a garage, the widening of doorways, and the addition of a wheelchair-accessible living space that included a bedroom and a bathroom qualified as an "orthopedic appliance." Also, in *Rieger*, this Court deter-

mined that a wheelchair was an "orthopedic appliance." However, in *Bomboy*, Bomboy never requested the repair or replacement of his wheelchair, so this Court never considered whether the repair or replacement of a wheelchair was an "additional modification" and therefore subject to a "one-time expenditure."

Here, there is no dispute that Claimant is a double amputee (arm and leg) as well as the amputation of two toes on his right foot. The record also establishes that Claimant resides in a three-story house where his only access to the second floor (where his bedroom is located) and the third floor is by the use of two stair glides. Lastly, Dan Corcoran, of McArdle Surgical, stated that the two stair glides were not functioning and need to be replaced:

Currently, Mr. Zuback [Claimant] has two stairclimb units that are over nine years old. The condition of the chairs can best be described as 'rickety'. The one unit, an Ameri–Glide, is no longer produced and parts are not easy to come by. The biggest problem is that Mr. Zuback [Claimant] uses the units quite a bit. Like a nine year old car with a lot of miles on it, the stairclimbs are falling apart. They are now to the point that constant repairs will be needed to maintain the units. Specifically, relays and capacitors will need replaced from wear. Call/send stations are worn, wiring is fraying, the chain is worn and the sprocket is slipping. The swivel seat is worn and not functioning correctly on both units....

Letter from Dan Corcoran of McArdle Surgical to SWIF, November 20, 2002, at 1; R.R. at 124a.

■ Unlike in *Bomboy*, Claimant did not seek any additional modifications to his house, but only the replacement of the two stair glides. The stair glide, which oper-

ates much like a wheelchair, is clearly an "orthopedic appliance." Further, this record reflects that SWIF has provided Claimant with numerous wheelchairs and replacement beds [5] as a result of "wear and tear." [6] Stair glides should receive the same treatment. "In reviewing workmen's compensation matters, we are also guided by the basic premise that our Workmen's Compensation Act is remedial in nature and is intended to benefit workers, and therefore, the Act must be liberally construed in order to effectuate its humanitarian objectives." *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 327, 652 A.2d 797, 799 (1995), *citing Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116 (1991).

## II. Whether The WCJ Erred When He Determined That Claimant Was Not Entitled To Attorney Fees And Litigation Costs?

█ Also, Claimant contends that the Board erred when it affirmed the WCJ's finding that Employer's contest was reasonable and therefore, Claimant was not entitled to attorney fees and costs.

Section 440(a) of the Act, 77 P.S. § 996(a) provides:

In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe ... in whose favor the matter at issue has been finally determined in whole or in part shall be awarded ... a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: *Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.* (emphasis added).

█ An employer's contest is reasonable if the contest was brought to resolve a genuinely disputed issue, not merely to harass the claimant. *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc.)*, 166 Pa.Cmwlth.512, 646 A.2d 713 (1994). The imposition of attorney fees is a question of law reviewable by the Board and this Court. *McGoldrick v. Workmen's Compensation Appeal Board (Acme Markets, Inc.)*, 142 Pa.Cmwlth.558, 597 A.2d 1254 (1991). Also, where there is a violation of the Act there cannot be a reasonable contest and an award of attorney fees is proper. *Department of Public Welfare v. Workers' Compensation Appeal*

---

**5.** Claimant testified to the following:

Q: Throughout the years would you agree that you've been provided with various — or numerous wheelchairs by the State Workers' Insurance Fund?
A: I've had four.
Q: And you've been provided with a couple of beds; have you not?
A: Yes.
Q: And are they special beds, orthopedic beds?
A: Yes.
N.T. at 12; R.R. at 60a.

**6.** In *Bowlaway Lanes v. Worker's Compensation Appeal Board (Caparosa)*, 90 Pa.Cmwlth. 534, 496 A.2d 99 (1985), this Court held:

It is clear, given the liberal interpretation afforded this legislation, that Section 306(f) of the Act makes the Eleventh Frame Lounge responsible for the costs of replacing the claimant's [Joseph L. Caparosa] artificial hip joint if such replacement should be required because of normal wear or tear *or* because of obsolescence. (emphasis in original).

*Id.* at 101–02, *citing Bealer v. Simmons*, 216 Pa.Super. 263, 264 A.2d 193 (1970).

*Board (Overton),* 783 A.2d 358 (Pa. Cmwlth.2001).

Prior to the present controversy, there is no case law directly on point interpreting whether the replacement of a stair glide can be considered an "additional modification" so as to preclude such replacement pursuant to this Court's decision in *Bomboy.* Therefore, Employer's contest was reasonable.

Accordingly, this Court reverses the Board's denial of the replacement costs for the two stair glides[7] and remands for a determination as to the cost of the replacement. As to the Board's denial of attorney's fees and costs, this Court affirms.

### *ORDER*

AND NOW, this 9th day of January, 2006, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed in part and affirmed in part. The order is reversed as to the denial of the cost of replacement of the two stair glides and the present matter is remanded for a determination as to the replacement cost. The Board's order denying attorney fees and costs is affirmed.

Jurisdiction relinquished.

---

7. This Court notes that the evidence of record established that Marshall Elevator and McArdle Surgical recommended that the stair glides be replaced. *See* Loriso Deposition at 27; R.R. at 95a. Specifically, Marshall Elevator refused to repair the stair glides because Claimant's model was no longer manufactured. Loriso Deposition at 16; R.R. at 84a. Although McArdle Surgery offered to repair the stair glides it would not warrant the repair work or guarantee the integrity of the stair glides. *See* Loriso Deposition at 16 and 17; R.R. at 84a and 85a.