**EQUITABLE RESOURCES, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (THOMAS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 19, 2009.

Decided Sept. 2, 2009.

Lawrence J. Baldasare, Pittsburgh, for petitioner.

Susan A. Meredith, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Equitable Resources (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board), which upheld the decision and order of the Workers' Compensation Judge (WCJ). Robert Thomas (Claimant) suffers from paraplegia resulting from a work-related injury. In her decision and order, the WCJ granted the Penalty Petition of Claimant and ordered Employer to pay for the repair of modifications to Claimant's bathroom. Employer argues that, although it was obligated to provide modifications to Claimant's home to accommodate his needs resulting from his paraplegia, it is not obligated to pay for the repairs necessitated by the substandard construction of those modifications.

Claimant injured his back while working for Employer on October 18, 1991. As a result of this injury, Claimant is unable to use his legs and suffers from bladder and bowel dysfunction. "Claimant is confined to a wheelchair as a result of his work injuries." (WCJ Decision, Findings of Fact (FOF) ¶ 5.) During Claimant's employment, Employer required Claimant to live on Employer's property at the Hartson Compressing Station in Finleyville, Pennsylvania. After Claimant's injury, Employer loaned Claimant money, at no interest, to purchase a house. The loan is expected to be repaid upon Claimant's receipt of a lump-sum settlement from Employer. "Employer made modifications to the Claimant's bathroom to accommodate his work injuries." (FOF ¶ 5.) The modifications were poorly done by the contrac-

tor Employer hired, and, as a result, a water leak caused damage to the bathroom and mold to form in the walls and under the floor. Employer provided for subsequent repair work to be performed on the bathroom, but the leakage was not resolved. Notably, Claimant credibly testified that Employer hired the contractor that initially performed the modifications. (Claimant Dep. at 6–7; Board Op. at 2.) Claimant requested that Employer provide for further repairs, and Employer refused.

Claimant filed his Penalty Petition, which was assigned to the WCJ. The WCJ held hearings and determined that "the cost to repair the bathroom is approximately $22,000.00." (FOF ¶ 5.) Relying on *Rieger v. Workmen's Compensation Appeal Board (Barnes & Tucker Co.)*, 104 Pa.Cmwlth.42, 521 A.2d 84 (1987), the WCJ characterized the modified bathroom as an "orthopedic appliance" such as a wheelchair, which Employer is obligated to provide per Section 306(f.1)(1)(ii) of the Workers' Compensation Act (Act),[1] and to repair or replace per *Zuback v. Workers' Compensation Appeal Board (Paradise Valley Enterprise Lumber Co.)*, 892 A.2d 41 (Pa.Cmwlth.2006). The WCJ found that:

9. This case is analogous to *Zuback*, in that the claimant is not seeking additional modifications to his bathroom, but repair of the existing modifications. Employer modified claimant's bathroom to accommodate claimant's wheelchair. The modifications were negligently performed and resulted in serious damage to claimant's house and bathroom. The employer should be responsible for the repair.

10. I find that the employer never provided the claimant with appropriate modifications to the bathroom. They were defective from the time the contractor completed his work. Since the modifications are considered "orthopedic appliances" under the Act, this is akin to the employer providing a defective wheelchair to the claimant. The employer would be responsible for the replacement of the defective wheelchair, and any damage that was caused by the defect. The employer is responsible for the repair of the bathroom modifications, and any resulting damage caused by the defect.

(FOF ¶¶ 9–10.) The WCJ chose to treat Claimant's Penalty Petition as a review petition, given that the legal issue of whether Employer is obligated to pay for the repairs to the bathroom is a novel one. The WCJ held that Employer is responsible for the repairs.

Employer appealed to the Board. As it had before the WCJ, Employer argued before the Board that *Bomboy v. Workmen's Compensation Appeal Board (South Erie Heating Co.)*, 132 Pa.Cmwlth.169, 572 A.2d 248 (1990), not *Zuback*, is the applicable precedent, and that Employer was only obligated to make a one-time payment to modify Claimant's home to accommodate his confinement to a wheelchair. The Board disagreed and found *Zuback* to be the more analogous precedent. Thus, the Board affirmed the WCJ's order. Employer now petitions this Court for review.[2]

Before this Court, Employer argues, as it did before the Board, that the current case is more similar to *Bomboy* than to

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(1)(ii).

2. "This Court's standard of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence." *Channellock, Inc. v. Workers' Compensation Appeal Board (Reynolds)*, 965 A.2d 1239, 1241 n. 2 (Pa.Cmwlth.2008).

*Zuback,* and that Employer should, therefore, only be held liable for the one-time cost of modifying Claimant's home, which it has already done. We disagree.

Section 306(f.1)(1)(ii) states that "the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section." 77 P.S. § 531(1)(ii). In *Rieger,* this Court concluded that the term "orthopedic appliances" in Section 306(f.1) includes modifications made to a claimant's home to accommodate his use of a wheelchair, reasoning that:

It is certainly clear ... that a wheelchair is, by common usage, an orthopedic appliance. It is undisputed that the claimant must use a wheelchair for much of his ambulation. It is likewise clear that all of the remodeling done upon the claimant's home was to permit him to utilize his wheelchair. There can be no doubt that bars placed within a bathroom and ramps leading to and from a home are certainly devices specifically designed for the particular use of wheelchair users. It is likewise certain that devices to aid in the use of wheelchairs fit within the above definition of "orthopedic." We must, therefore, conclude that the remodeling done upon claimant's home in the instant case is within the definition of "orthopedic appliance."

*Rieger,* 521 A.2d at 86.

Three years after *Rieger* was decided, this Court, in *Bomboy,* revisited the issue of when an employer must pay for modifications to a claimant's home to accommodate the claimant's use of a wheelchair. In *Bomboy,* the employer paid for "the modification of the claimant's basement into a wheelchair-accessible living space, with a bedroom and a bathroom." *Bomboy,* 572 A.2d at 248. Approximately six years after the employer made these initial modifi-

cations, "the claimant sought additional home modifications, including an attached garage, a wheelchair lift, and utility cost reimbursements." *Id.* The employer refused payment for these additional modifications, and the claimant filed a petition to force the employer to pay for them. The referee in that case and the Board denied the claimant's petition, finding that *Rieger* did not apply on the grounds that the modifications claimant sought were complex and expensive. This Court affirmed the Board, explaining that:

[T]he claimant's home in *Rieger* had not been previously modified to accommodate his wheelchair, as was the claimant's home here....

However, in the present case, the employer, at the claimant's request, had previously modified the claimant's home by installing a wheelchair-accessible bedroom and bathroom in the claimant's basement. These modifications, costing approximately $5,000.00, converted the claimant's basement into living quarters for the claimant.

Although we agree that *Rieger* requires an employer to provide home modifications at the employer's expense, such modifications are limited to a "... one-time expenditure." In this case, the employer previously modified the home in which the claimant presently lives. Thus, no additional modifications are warranted under *Rieger.*

*Bomboy,* 572 A.2d at 250. Employer argues, pursuant to this reasoning from *Bomboy,* that since it has already made a one-time expenditure to modify Claimant's home, Employer has discharged its obligation to Claimant in this regard.

However, Claimant argues, and this Court agrees, that our decision in *Zuback* is applicable to the case at bar. In *Zuback,* the employer installed stair glides in the claimant's home to allow the claimant

to move between floors. More than 25 years after the employer initially installed the glides, the claimant filed a penalty petition against the employer alleging that the employer had failed to pay to have the glides repaired. The WCJ denied the claimant's petition, and the Board affirmed that decision, reasoning that the employer was only required to make a one-time expenditure to modify the claimant's home, which it had done. This Court discussed *Rieger* and *Bomboy* and concluded that:

> Unlike in *Bomboy*, Claimant did not seek any additional modifications to his house, but only the replacement of the two stair glides. The stair glide, which operates much like a wheelchair, is clearly an "orthopedic appliance." Further, this record reflects that SWIF has provided Claimant with numerous wheelchairs and replacement beds as a result of "wear and tear." Stair glides should receive the same treatment. "In reviewing workmen's compensation matters, we are also guided by the basic premise that our Workmen's Compensation Act is remedial in nature and is intended to benefit workers, and therefore, the Act must be liberally construed in order to effectuate its humanitarian objectives."

*Zuback*, 892 A.2d at 46–47 (footnotes omitted) (quoting *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 327, 652 A.2d 797, 799 (1995)).

■ This Court's rationale in *Zuback* is applicable to the facts of the case at bar. In this case, the WCJ found that *"Employ-*

er made modifications to the claimant's bathroom to accommodate his work injuries. *These modifications were negligently performed* by the contractor." (FOF ¶ 5 (emphasis added).) Employer did not challenge this finding. (*See* Appeal From Judge's Findings of Fact and Conclusions of Law, January 14, 2008 (stating that Employer challenged Findings of Fact Paragraphs 9, 10 and 13).) Claimant is not seeking additional modifications to his home, as was the claimant in *Bomboy*. Claimant is seeking to have Employer repair the defects in the original modifications made by the contractor Employer selected. Employer is, in a way, correct that *Zuback* is not directly on point. In *Zuback*, the repairs to the stair glides were necessitated by years of normal wear; however, in this case, the modifications were not adequately performed in the first place. It would be unconscionable to hold that an employer could discharge its obligations under Section 306(f.1) by providing defective, negligently-made orthopedic appliances.[3]

■ Employer argues "that where the evidence shows that [Employer] not only advanced $125,000.00 to [Claimant] for the purchase of his home and also paid more than $150,000.00 to modify the home[, Employer] has met its obligations of providing the necessary 'orthopedic appliance' as required by § 306(f.1) of the Act." (Employer's Br. at 6.) Employer's conduct in advancing money to the Claimant to purchase a home, and in having the home modified, is laudable. However, even though Employer has spent a large sum of

---

3. Employer argues that it "is not simply being asked to replace an item that is no longer useful due to wear and tear—such as a stair glide or a prosthetic device—but is essentially being asked to pay for the same modifications a third time." (Employer's Br. at 6.) This argument *might* have merit if the Claimant had selected the contractor who modified and

repaired the home; however, he did not. As mentioned above, Employer hired the contractor who initially performed the modifications and repairs. (Claimant Dep. at 6–7; Board Op. at 2.) Employer offers no explanation why Claimant, and not Employer, should bear the risk that the contractor Employer hired might perform negligent work.

money to provide necessary orthopedic appliances to Claimant, it has not discharged its obligation under Section 306(f.1) because the orthopedic appliances it provided are defective.

██ Employer argues that there is no evidence that the defects in the modifications to the Claimant's bathroom render the bathroom useless and that, therefore, the current case is distinguishable from *Zuback.* The WCJ found as a fact that "the claimant's shower leaks into his basement. This has led to severe damage to his bathroom as well as extensive mold in the walls and under the floor." (FOF ¶ 5.) As mentioned above, Employer did not challenge this finding of fact before the Board. Moreover, there is support in the record for a finding that the bathroom is leaking into Claimant's finished basement and damaging his home. (Claimant Dep. at 9, 23–24; Claimant's Ex. 2, *Thomas v. Kress Brothers Builders, Inc.,* Hr'g Tr. at 68–70.) Employer has not provided an adequate orthopedic appliance by merely providing a modified bathroom that leaks into Claimant's finished basement, causing mold and damaging the structure of the home.

Finally, Employer argues that it should not be required to pay for the repairs to Claimant's bathroom because "there is absolutely no evidence indicating that the additional repairs being discussed for [Claimant's] bathroom will ultimately remedy the situation." (Employer's Br. at 7.) However, such evidence is, in fact, in the record.[4] Claimant introduced a transcript of the testimony of a remodeling contrac-

tor, Louis John Angelo. Mr. Angelo testified during Claimant's action against the contractor that initially performed the modifications.[5] Mr. Angelo testified extensively as to the existing problem, his professional opinion as to how best to remedy the leakage, and the deficiencies of other proposed methods of repair. (*See* Claimant's Ex. 2, *Thomas v. Kress Brothers Builders, Inc.,* Hr'g Tr. at 55–85.) While this testimony does not, of course, *guarantee* that the proposed repairs will cure the deficiencies of Employer's initial modifications, it does provide support for a conclusion that the course of repairs sought by Claimant is appropriate.

For these reasons, we affirm the order of the Board.

## *ORDER*

**NOW,** September 2, 2009, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **AFFIRMED.**

---

4. We also note that whether Employer agrees that the proposed course of repairs is the best course is a separate issue from whether Employer is obligated to make the repairs in the first place. We note that the WCJ found that "[t]he cost to repair the bathroom is approximately $22,000.00." (FOF ¶ 5.) Employer

neither challenged this finding, nor did it argue that the repairs could or would cost less. Employer only challenged its obligation to make the repairs.

5. Employer initially objected to this testimony as hearsay, but later withdrew the objection.