# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bernice Bennett, : 
               Petitioner : 
  : 
        v. :   No. 707 C.D. 2022
  :   Submitted: January 27, 2023
Jeld-Wen, Inc. (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

**BEFORE:    HONORABLE RENÉE COHN JUBELIRER,** President Judge
              **HONORABLE MICHAEL H. WOJCIK,** Judge
              **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: November 20, 2023**

Bernice Bennett (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying Claimant's Petition to Review Medical Treatment and/or Billing (Review Petition). The WCJ found that Claimant did not meet her burden of proving that a left trigger thumb surgery and associated scar revision surgery were causally related to Claimant's work injury as defined by an executed and WCJ-approved Compromise and Release (C&R) Agreement. The WCJ also found that Claimant was barred by res judicata from seeking to expand her work injury beyond that set forth in the C&R Agreement. On appeal, Claimant argues the WCJ erred in rejecting her medical expert's opinion in support of causation and in finding that Claimant was barred from seeking to include the left trigger thumb as part of her work-related injuries. Upon review, we affirm.

Claimant sustained a work-related injury in 2010 that was, ultimately, determined to include complex regional pain syndrome (CRPS) of the left upper extremity. In October 2017, Claimant and Jeld-Wen, Inc. (Employer) entered into the C&R Agreement, which provided as follows:

> The parties agree that the nature of the injury or injuries by [] [C]laimant are [CRPS] of the left upper extremity and cervical scarring only. Claimant acknowledges that she did not suffer any other mental, physical, specific loss, disfigurement, or other scarring injuries with[in] the scope of employment. []

(Reproduced Record (R.R). at 67a.) "The [C&R] Agreement settled all aspects of Claimant's Workers' Compensation claim, with the exception of medical benefits. The [C&R] Agreement gave [Employer the] option to settle Claimant's Workers' Compensation medical benefits by funding a Medicare Set-Aside." (WCJ Decision, Findings of Fact (FOF) ¶ 4 (internal quotation marks omitted).)

In September 2020, Claimant saw Jay Talsania, M.D. of Orthopedic Specialists, with whom she has treated for her work injury since 2010, for a trigger thumb in her left hand. In a note dated September 1, 2020, Dr. Talsania indicated he did not believe Claimant's "trigger thumb was related to any work activity" and directed that the bills related thereto should be submitted to Medicare. (*Id.* ¶ 10e.) Dr. Talsania performed surgery on Claimant's left thumb on September 4, 2020, at the Surgery Center of Allentown. Claimant submitted to Employer various bills from the Surgery Center and Orthopedic Specialists. Claimant is a Medicare beneficiary, and Medicare paid for all but a small portion of the bills from Orthopedic Specialists. Claimant underwent a second surgery on December 14, 2020, to resolve scar tissue issues arising from the September 2020 surgery for which Medicare paid most of the bill. Employer denied payment of certain bills as being

2

unrelated to the work injury. At issue in particular are a $6,000.00 bill from the Surgery Center for the September surgery, partial bills for a June 4, 2020 office visit and a June 19, 2020 ganglion block from Orthopedic Specialists, and a partial bill from Orthopedic Specialists for the December surgery.

In between the surgeries, Claimant filed the Review Petition averring that Dr. Talsania performed surgery "for [Claimant's] CRPS of her left upper extremity . . . and the insurer has refused to pay for it in accordance with [the] C&R [A]greement." (FOF ¶ 1 (internal quotation marks omitted, alterations added).) Employer filed an answer denying the material allegations. The Review Petition was assigned to the WCJ, who held hearings. At one of the hearings, Employer agreed to pay the June 4, 2020 bill.

Claimant presented the outstanding bills, her own testimony, and the deposition testimony of Dr. Talsania. Claimant testified[1] that she treated her work-related injury with Dr. Talsania since 2010, she saw Dr. Talsania only for that injury, and she described the treatment she received for her left trigger thumb. Claimant received a $6,000.00 bill from the Surgery Center for the September 2020 surgery, she did not know why the bills were submitted to Medicare, and she was confused by Dr. Talsania's September 1, 2020 note indicating his belief that the trigger thumb was not work-related.

Dr. Talsania, a board-certified orthopedic surgeon, described his treatment of Claimant from 2010 through December 2020.[2] On September 1, 2020, Claimant

---

[1] Claimant's testimony is found at items 11 and 12 of the Certified Record and pages 27a through 38a and 56a through 58a of the Reproduced Record. The WCJ summarized that testimony in Finding of Fact 9.

[2] Dr. Talsania's deposition testimony is found at item 15 of the Certified Record and pages 84a through 121a of the Reproduced Record. The WCJ summarized Dr. Talsania's testimony in Finding of Fact 10.

presented with a locked trigger thumb, or tenosynovitis, caused by the swelling of tendons, on which he performed successful surgeries in September and December 2020. Dr. Talsania discussed the condition with Claimant at the initial office visit and testified that he indicated "in his notes that he did not feel that the trigger thumb was related to any work activity and that this should be put under Claimant's private insurance," which was Medicare. (FOF ¶ 10e, k.) At an office visit on November 5, 2020, Claimant and Dr. Talsania discussed the causation of the trigger thumb, "and he changed his opinion to state that the need for the trigger thumb surgery was related to the condition of the left upper extremity, i.e., the CRPS." (*Id.* ¶ 10f.) Dr. Talsania opined both surgeries were related to the CRPS because "a lot of people with [CRPS] can have problems with issues from their swelling, including carpal tunnel, nerve compression problems, and what's called 'stenosing tenosynovitis[,]' which is commonly known as trigger digits." (*Id.* ¶ 10e, h.)

On cross-examination, Dr. Talsania disagreed that the precise cause of trigger finger was unknown and there were many causes, and risk factors, for that condition. In his view, anything that can cause swelling of the tendons can cause trigger fingers. Dr. Talsania cited the American Medical Association Guides to the Evaluation of Diseases and Injury Causation, Second Edition (AMA Guides), noted the nonoccupational risk factors for trigger fingers, and agreed that CRPS was not mentioned as a cause. As to the September 1, 2020 office note, the WCJ summarized Dr. Talsania's testimony as follows:

> [a]t the time . . . [he] had been seeing Claimant for her work-related injury for ten years. [] He agreed that he had regularly submitted bills to the Workers' Compensation carrier, and he assumed that his office was paid for services rendered. [] He agreed that at the September 1, 2020[] visit he could have said the trigger finger was a work-related condition, but he acknowledged that he did not. [] [He] then explained why he changed his opinion, noting that he had treated Claimant for

4

triggers before.  []  [He] pointed to a February 16, 2017[] office note where there were findings consistent with tenosynovitis and triggering. []

(*Id.* ¶ 10m.)

Employer offered Dr. Talsania's records for Claimant in opposition to the Review Petition, which included Dr. Talsania's September 1, 2020 note.[3]  (FOF ¶ 11.)  Employer also submitted an excerpt from the AMA Guides on the risk factors for trigger fingers, which Dr. Talsania addressed during his deposition.[4]

Upon his examination of the record, the WCJ found as follows:

12.  This Judge finds, as a fact, that Dr. Talsania was aware, at the time of the September 1, 2020[] office visit, that part of Claimant's "Care Team" included Workers' Compensation coverage. . . .  This was notated in the office notes maintained by the doctor.  []  This Judge further finds that at the time of the September 1, 2020[] office visit, [Dr. Talsania] specifically distinguished the insurance coverage he thought would be responsible for the treatment for the trigger thumb.  []  This was all done prior to the commencement of the instant litigation.

. . . .

14.  This Judge finds that post surgery and after litigation commenced in this matter, Dr. Talsania saw Claimant on November 5, 2020. . . .  At that time, [Dr. Talsania] changed his opinion and noted the following:

[]There was a discussion regarding causation.  I originally opined 09/01/20[20,] that I would do the trigger thumb under her private insurance as she had not been working.  My understanding is her worker[]s['] compensation carrier is responsible for the left upper extremity from her CRPS under my care for over 10 years for the left upper extremity.  Within a reasonable degree of medical certainty, I do feel the need for her left trigger thumb

---

[3] These records are found at items 19 and 21 through 23 in the Certified Record and pages 130a through 136a and 141a through 241a of the Reproduced Record.

[4] The excerpts from the AMA Guides are found at item 20 in the Certified Record and pages 137a through 140a of the Reproduced Record.

5

surgery is related to the condition at the left upper extremity.[] []

(*Id.* ¶¶ 12, 14.)

The WCJ found Claimant's "testimony credible, but not dispositive, as to the ultimate issue presented in this dispute" because the WCJ did not find the causal nexus between CRPS and left trigger thumb to be obvious. (*Id.* ¶ 15a.) However, the WCJ specifically rejected as not competent or credible any implication from Claimant's testimony that she treated only her work-related injury with Dr. Talsania and therefore the trigger thumb was work related. The WCJ noted that, as early as February 2017, Claimant began experiencing trigger fingers, which were treated by Dr. Talsania, but Claimant agreed in the C&R Agreement that the nature of her work injuries was limited to CRPS of the left upper extremity and cervical scarring, notwithstanding that at that time she "knew that she had suffered from and [] had treated for trigger fingers," a condition not included in the C&R Agreement. (*Id.*) The WCJ further noted that Claimant had not specifically reserved the right in the C&R Agreement to expand the injury description.

The WCJ found "the testimony of Dr. Talsania to be less than credible or persuasive in this dispute," citing Dr. Talsania's September 1, 2020 note disclaiming work-relatedness of the trigger thumb and to charge Claimant's private insurance and then, after the commencement of the litigation and a discussion with Claimant, his change of opinion. (*Id.* ¶ 15b.) The WCJ found Dr. Talsania's reference to the AMA Guides to support his changed opinion "unpersuasive and less than credible[] given the fact that [Dr. Talsania] acknowledged that the AMA Guides . . . did not list [CRPS] as one of the risk factors in developing tenosynovitis i.e., triggering." (*Id.*) "Given the inconsistency in the opinions expressed by" Dr. Talsania, the WCJ "reject[ed] the changed opinion . . . that the triggering of the thumb was related to,

6

or caused by, the accepted work injury" and "placed more weight upon the initial opinion rendered . . . on September 1, 2020[,]" than the one given once litigation began. (*Id.*)

Based on these determinations, the WCJ concluded that Claimant had not met her burden of proof on the Review Petition because Claimant did not submit credited medical evidence that the left trigger thumb and associated surgeries were causally related to the work injury described in the agreed upon C&R Agreement. (WCJ Decision, Conclusion of Law ¶ 5.) Additionally, the WCJ held that Claimant was barred by the doctrine of res judicata from attempting to expand the description of the work injury set forth in the C&R Agreement because such description is conclusive and binding, absent a reservation of the right to revisit the injury description, which Claimant had not done. (*Id.*) Because Claimant was aware she had experienced trigger fingers and received treatment in February 2017, prior to her entering into the C&R Agreement, and did not include those injuries in that agreement, the WCJ held Claimant could not now expand the injury description to include those known injuries. (*Id.*) Accordingly, the WCJ denied the Review Petition.

Claimant appealed to the Board, which affirmed, finding no error in the WCJ's reasons for denying the Review Petition. Claimant now petitions this Court for review.[5]

On appeal, Claimant argues that the Board erred in affirming the WCJ's decision because "[t]he only competent medical testimony offered," that of Dr.

---

[5] This Court's scope of review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

Talsania, "established the surgery resulted from the compensable work-related injury." (Claimant's Brief (Br.) at 8.) According to Claimant, Dr. Talsania explained the records relied upon by Employer to deny payment and "it was an error for the [WCJ] to rely on a few pages from the AMA Guides to deny this claim for the bill, since no competent medical testimony was offered to show that . . . the surgery . . . was unrelated to the work injury." (*Id.* at 13.)

Employer responds that Claimant's arguments amount to an impermissible attempt to relitigate the underlying petition and have the Court make credibility and evidentiary weight determinations that differ from the WCJ. Employer asserts the WCJ's findings of fact and credibility determinations are supported by substantial evidence and his conclusions that Claimant failed to meet her burden of proof on the Review Petition are without legal error.

Before the Board, Claimant asserted the same arguments as are asserted here and the Board found them to be without merit based on the following legal standards.

> The Workers' Compensation Act (Act)[6] requires an employer to pay for medical expenses that are causally related to a work injury. *CVA, Inc. v. W[orkers' Comp. Appeal Bd.] (Riley)*, 29 A.3d 1224, 1227 (Pa. Cmwlth. 2011). Where the employer refuses to pay medical bills, the burden of proving that the treatment is related to the compensable injury "turns on whether the connection is **obvious**." *Kurtz v. W[orkers' Comp. Appeal Bd.] (Waynesburg College)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002) (emphasis in original). An obvious connection involves a nexus ["]so clear that an untrained lay person would not have a problem in making the connection between["] the condition being treated and the work injury. *Id.* at 447-[]48 [(quoting] *Tobias v. W[orkmen's Comp. Appeal Bd.] (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784-85 (Pa. Cmwlth. 1991)[)]. If the connection is not obvious, the claimant has the burden of establishing the connection through medical evidence. *Kurtz*, 794 A.2d at 448; *Haslam v.*

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4—2501-2710.

8

*W*[*orkers' Comp. Appeal Bd.*] *(London Grove Comm*[*.*]*)*, 169 A.3d 704, 710-[]11 (Pa. Cmwlth. 2017).

(Board Op. at 3.)

Applying these standards, the Board held

the WCJ did not err in denying Claimant's Review [] Petition.  The burden of proof in this litigation depended on whether the treatment at issue was obviously related to the compensable injury.  *Kurtz*[, 794 A.2d at 448].  [It] agree[d] with the WCJ's determination that the connection between left trigger thumb surgery and Claimant's work-related CRPS is not obvious[] because it does not involve a nexus so clear that an untrained lay person could easily make that connection. *Tobias*[, 595 A.2d at 784].  Therefore, Claimant had the burden of establishing the causal connection through credible medical evidence. *Kurtz*[, 794 A.2d at 448]; *Haslam*[, 169 A.3d at 710-[]11].  Dr. Talsania testified that Claimant's left trigger thumb for which he performed surgery in September and December 2020 was causally related to her work-related CRPS, but the WCJ rejected Dr. Talsania's testimony in this regard as not credible.  Although as Claimant points out, Dr[.] Talsania was the only medical expert to testify, Dr. Talsania himself acknowledged that he initially opined that Claimant's left trigger thumb was not work[]related.  The WCJ decided to credit Dr. Talsania's original opinion over his subsequent, changed opinion, which was the WCJ's prerogative, and the Board cannot disturb the WCJ's credibility determinations.  As a result, Claimant failed to meet her burden of proof.[]

(Board Op. at 5-6 (footnote omitted).)

We agree with the Board's analysis that, under *Kurtz*, Claimant bore the burden of showing the causal connection and could not meet that burden because the WCJ did not credit the part of Dr. Talsania's opinion upon which she was relying. Like the Board, we are bound by the credibility determinations, which are for the WCJ, not this Court, to make. *AT & T v. Workers' Comp. Appeal Bd. (Hernandez)*, 707 A.2d 649, 655 (Pa. Cmwlth. 1998).  As factfinder, a WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part."

9

*Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995).

Claimant next argues that, if Employer disputed the causal connection, it had to seek utilization review (UR) of the treatment in order not to pay under *Omni Pharmacy Services, LLC v. Bureau of Workers' Compensation Fee Review Hearing Office*, 241 A.3d 1273 (Pa. Cmwlth. 2020), *appeal denied*, 257 A.3d 1212 (Pa. 2021), and it did not. Employer responds *Omni Pharmacy* is inapplicable because this is not a fee review proceeding and the UR process need not be invoked here because even Dr. Talsania's records did not reflect that the treatment was related to the work injury.

We agree with Employer that neither *Omni Pharmacy* nor the UR process provide Claimant with relief. *Omni Pharmacy* involved a pharmacy seeking payment through the fee review process for bills that were denied on the basis that the treatment was not causally related to the work injury. The question in *Omni Pharmacy* was whether the Bureau of Workers' Compensation Fee Review Hearing Office had jurisdiction to consider the pharmacy's fee review petition or whether the fee review petition was premature based on the employer's causation-based denial of liability. 241 A.3d at 1275. This is not a fee review proceeding; it is a Review Petition over which the WCJ plainly had jurisdiction. Further, while an employer is obligated to pay the reasonable medical expenses causally related to the work injury, it may still deny payment based on causation, but opens itself up to a penalty if it is incorrect. *Listino v. Workmen's Comp. Appeal Bd. (INA Life Ins. Co.)*, 659 A.2d 45, 47 (Pa. Cmwlth. 1995). "The employer, who questions 'causation' and . . . medical bills, may escape penalty provision liability for unilaterally ceasing to pay for these medical benefits, *if* a [WCJ] later determines that these medical bills are indeed not

10

causally related to the work-related injury." *Id.* (emphasis in original). In this "situation, the employer is (1) not subject to penalties under the Act and (2) is not responsible to pay retroactively for a claimant's medical treatments." *Id.* Thus, contrary to Claimant's assertion, Employer could deny payment for medical bills based on causation without invoking the UR process, and because the WCJ found that the trigger thumb was not causally related to the accepted work injury, Employer was not required to retroactively pay for Claimant's treatments or liable for penalties, had they been requested. *Id.*

Claimant next asserts, as she did before the Board, that the WCJ did not issue a reasoned decision based on competent evidence. The Board disagreed, explaining that

> Section 422(a) of the Act requires the WCJ to issue "a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. A decision is reasoned for purposes of Section 422(a) if it allows for adequate appellate review without the need for further elucidation. *Daniels v.* [*Workers' Comp. Appeal Bd.*] *(Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). Upon review, we determine the WCJ adequately summarized the evidence, made appropriate credibility determinations, made all necessary findings of fact and conclusions of law, and thoroughly explained his rationale. Although Claimant disagrees with the WCJ's decision, that does not mean that the decision is not reasoned. In short, the WCJ's decision meets the criteria of Section 422(a) and allows adequate appellate review by the Board.

(Board Op. at 6 n.4.) We agree with the Board's conclusion that the WCJ's decision satisfies the reasoned decision criteria of Section 422(a) and allows for adequate appellate review by this Court.

11

Claimant last argues the Board erred in affirming the conclusion she was barred from seeking to amend the description of the work injury agreed upon in the C&R Agreement because the trigger thumb issue was obviously the result of the work injury and "had never been litigated or been a problem prior to the C[&R Agreement]." (Claimant's Br. at 8.) Claimant maintains the trigger thumb is an obvious result of the swelling from her CRPS of the left upper extremity, and, even if it were not obvious, the Review Petition was filed within three years of the last payment of benefits thereby making it timely. (*Id.* at 11.)

Employer asserts there was no error in finding Claimant's attempt to expand the description of the work injury after the C&R Agreement was barred by res judicata pursuant to *DePue v. Workers' Compensation Appeal Board (N. Paone Construction, Inc.)*, 61 A.3d 1062 (Pa. Cmwlth. 2013). Employer maintains it and Claimant are bound by the C&R Agreement's terms, which include the description of the work injury, and Claimant did not expressly reserve the right to revisit that description in the future. According to Employer, Claimant was aware that she experienced trigger fingers in her left hand as early as February 2017, did not seek to include that injury in the C&R Agreement, and may not do so now. To the extent it voluntarily paid medical bills related to such treatments in the past, this, Employer argues, was not an admission of liability for such bills. (Employer's Br. at 20 (citing *Securitas Sec. Servs. USA, Inc. v. Workers' Comp. Appeal Bd. (Schuh)*, 16 A.3d 1221 (Pa. Cmwlth. 2011)).)

Claimant asserted this argument before the Board, which found no error. It held that while Section 413(a) of the Act, 77 P.S. §§ 771-772, permits the amendment of the description of a work injury, *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009),

12

an injury description in a C&R Agreement is final and binding absent a clear showing of fraud, deception, duress, mutual mistake, or unilateral mistake caused by the opposing party's fault[, none of which Claimant alleges.][] *DePue* . . . , 61 A.3d [at] 1067 . . . . Unless the claimant expressly reserves the right to amend the injury description in the C&R Agreement, he or she is precluded from raising that issue after the C&R Agreement is approved. *Id.* This rule applies both to matters that were raised and matters that might have been raised. *Id.* (citing *Lance v. Mann*, 60 A.2d 35, 36 (Pa. 1948)). Unless an employer promises to continue to pay medical bills for a particular injury and the claimant relies on that promise when entering into the C&R Agreement, payment of medical bills is not an admission of liability for an injury. *Id.* at 1068-[]69.

We determine that the WCJ did not err in concluding that Claimant's Review [] Petition is barred. In the C&R Agreement, which was approved by a WCJ in October 2017, Claimant and [Employer] agreed that the work injury was "[CRPS] of the left upper extremity and cervical scarring **only**." According to Dr. Talsania, who has been treating Claimant since 2010, Claimant had trigger fingers on her left hand beginning in February 2017 and was aware of that diagnosis. However, Claimant did not include trigger fingers in the C&R Agreement or expressly reserve the right to expand the injury description in the future. Claimant is technically correct that she never had a trigger thumb until September 2020, but because she previously had other trigger fingers, she was on notice of the general issue. Under *DePue*, Claimant is barred from adding trigger thumb to the injury description or requiring [Employer] to pay for its treatment. Moreover, [Employer's] past payment of medical bills pertaining to trigger fingers is not an admission of liability where, as here, there is no allegation that Claimant relied on a promise from [Employer] that it would continue to pay for treatment for trigger fingers.

(Board Op. at 7-8 (emphasis added) (footnote omitted).)

We agree with the Board's reading of *DePue* and its application of *DePue*'s legal principles to the present matter. Claimant argues that *DePue* is distinguishable because, there, the claimant sought to add a known shoulder injury to the injury description contained in a C&R Agreement, and, here, she never experienced or treated a trigger thumb prior to the C&R Agreement. However, we agree with the

Board that Claimant was on notice that the triggering of digits and associated medical treatment was possible before she entered into the C&R Agreement, and, despite being on notice of the issue, she did not include it in that agreement or reserve the right to amend the injury description in the future. Under these facts, the Board did not err in affirming the WCJ's conclusion that Claimant, like the claimant in *DePue*, is barred from amending the description of the work-related injury agreed upon in the C&R Agreement.

For the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bernice Bennett,                  :
             Petitioner     :
                       :
        v.             :   No. 707 C.D. 2022
                       :
Jeld-Wen, Inc. (Workers'     :
Compensation Appeal Board),  :
          Respondent  :

# O R D E R

**NOW**, November 20, 2023, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge